# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
NATIONWIDE MUTUAL FIRE                )
INSURANCE COMPANY,                       )
                                                    )
              Plaintiff,          )
                                                    )
     v.                                   )          Civil Action No. 13-1009 (ABJ)
                                                    )
ALMCO, LIMITED, *et al.*,                  )
                                                    )
          Defendants.       )
_____)

## <u>MEMORANDUM OPINION</u>

Plaintiff Nationwide Mutual Fire Insurance Company ("Nationwide") has brought this lawsuit against defendant Almco, Limited ("Almco"), seeking a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that the insurance policy it issued to Almco is void because it was "procured as a result of a material misrepresentation." Compl. [Dkt. # 1] ¶¶ 12, 17, 20–22, 24. Specifically, Nationwide alleges that Almco represented on its insurance application that it operated a delicatessen on the insured premises when in fact it operated a pool hall and nightclub, providing live entertainment and hosting private events where alcoholic beverages were sold. *Id.* ¶¶ 17, 20. Nationwide asks the Court to find that that it is relieved of any obligation to honor the insurance policy pursuant to D.C. Code § 31-4314, which provides that a false statement on an insurance application may bar the insured's right to recovery if the "false statement was made with intent to deceive," or if "it materially affected either the acceptance of the risk or the hazard assumed by the company." *Id.* ¶¶ 24–25; D.C. Code § 31-4314.

The parties have filed cross-motions for summary judgment. Mot. of Def. for Summ. J. [Dkt. # 72] ("Def.'s Mot."); Mem. of P. & A. in Supp. of Def.'s Mot. [Dkt. # 72-1] ("Def.'s

Mem."); Pl.'s Cross-Mot. for Summ. J. [Dkt. # 74] ("Pl.'s Mot."); Pl.'s Mem. of P. & A. [Dkt. # 74-1] ("Pl.'s Mem.").  Defendant Almco urges the Court to find as a matter of law that there was no intent to deceive and to enter judgment in its favor for that reason.  Plaintiff Nationwide argues that Almco's own admissions make clear that the answers on the application were false, and that since the false statements were material, it is entitled to the declaration it seeks, notwithstanding any evidence related to Almco's intent.  *See* D.C. Code § 31-4314 ("The falsity of a statement in the application for any policy of insurance shall not bar the right to recovery thereunder unless such false statement was made with intent to deceive *or* unless it materially affected either the acceptance of the risk or the hazard assumed by the company.") (emphasis added).

It is not disputed that the insurance application contained false statements about the nature of Almco's business.  And because the Court concludes that there is no genuine dispute that the misrepresentations materially affected Nationwide's acceptance of the risk or hazard in issuing the policy, Nationwide's motion for summary judgment will be granted.  A disco is not a deli, and the risks posed by the combination of billiards, booze, and entertainment are materially different from the hazards that could arise out of a corned beef on rye.  In light of the materiality finding and the alternative nature of the statute, the Court need not reach the question of the existence of an intent to deceive.  But even if defendant's motion for summary judgment were not moot, it would fail because there is a genuine dispute of material fact on the question of Almco's intent.

## BACKGROUND

The following facts are undisputed, except where noted.[1]  Almco was formed by Regina Ruckman in the District of Columbia in May of 2011.  Dep. of Regina Ruckman (June 9, 2015), Ex. 1 to Pl.'s Mot. [Dkt. # 74-2] ("Ruckman Dep.") 18:13–15, 20:16–18.  The plan was to eventually operate as a delicatessen, but the sandwich business was not underway at the start.  *Id.* 20:13–15, 20:19–21.

Ruckman, acting as Almco's principal, "was responsible for securing insurance coverage for Almco."  Declaration of Regina Ruckman, Ex. A to Def.'s Mot. [Dkt. # 72-3] ("Ruckman Decl.") ¶ 2.  From September 1, 2011 through September 1, 2012, the business was covered by a businessowner's insurance policy provided by Travelers Casualty Insurance Company of America ("Travelers").  *Id.* ¶ 4; Ex. G to Def.'s Mot. [Dkt. # 72-3] ("Travelers Policy").[2]  That policy was brokered by First Insurance Group, and it listed Almco as a "restaurant pac" in the business of "fast food."  Travelers Policy.  Ruckman stated in a sworn declaration that during the period in which Almco was covered by the Travelers Policy, Almco "provided food service, had pool tables,

---

1        As required by Local Civil Rule 7(h), Almco filed a statement of the material facts as to which it contends there is no genuine dispute along with its motion for summary judgment.  Def.'s Statement of Genuine Issues of Material Fact Not in Dispute [Dkt. # 72-2] ("Def.'s SOF").  In support of its cross-motion, Nationwide did not file the required statement of material facts, but in its memorandum, it did point to the specific record citations that supported its position, and attached the relevant exhibits for the Court's review.  *See* Pl.'s Mem. at 6–13.  So, while Nationwide did not strictly comply with the Rule 7(h) requirement, the Court finds that its summary of the relevant facts and its citations to the record are sufficient to permit it to rule on the pending motions.

2        Nationwide maintains that "facts related to a Travelers insurance policy . . . are irrelevant to the issue before this Court" – "whether Almco made material misrepresentations in it [sic] application for the Nationwide insurance policy . . . which misrepresentations Nationwide relied upon to issue the Nationwide policy."  Pl.'s Resp. to Def.'s Mot. [Dkt. # 73] ("Pl.'s Opp.") at 2.  But because those facts are raised in Almco's motion and supported by Almco's proffered evidence, the Court will address them as part of its discussion of the background of this case.

offered live entertainment including DJs, served alcoholic beverages through vendors and caterers licensed to do so and had paid admissions and cover charges."  Ruckman Decl. ¶ 9.  From the day it opened, it traded under the name "DC Soundstage."  Ruckman Dep. 40:10–13.

On August 28, 2012, Ruckman completed a cancellation request form to discontinue Almco's coverage with Travelers, effective September 1, 2012.  Ex. C to Def.'s Mot. [Dkt. # 72-3] ("Cancellation Request").  That document was also signed by Audrey Sample,[3] who was listed as the "producer," along with First Insurance Group.  *Id.*  Sample initially worked for First Insurance Group, but later was authorized to write insurance products for Nationwide through the Peter Michael Felix Insurance Agency.  Dep. of Audrey Sample (June 25, 2015), Ex. 3 to Pl.'s Mot. [Dkt. # 74-4] ("Sample Dep.") 10:6–13:13.

On August 31, 2012, Ruckman signed a commercial insurance application on behalf of Almco, seeking a "premier businessowners" policy with Nationwide.  Ex. 2 to Compl. [Dkt. # 1-2] ("Insurance Appl."); Ruckman Decl. ¶¶ 1–2.  The application was prepared by Shelley Christine Hall of the Peter Michael Felix Insurance Agency, and it listed Audrey Sample as the "producer contact."  Insurance Appl. at 1–2.  The Insurance Application described Almco's business as a "deli," and it stated that Almco did not have a website, did not "serve or sell alcohol," and did not "have bouncers, DJs, live entertainment, pool tables . . . paid admissions, cover chargers or other similar exposures."  *Id.* at 2–3.  It also represented that Almco did not have "any other exposures that have not been identified" in the application.  *Id.* at 2.  In signing the application, Ruckman certified that the answers were "true, correct and complete to the best of [her] knowledge."  *Id.* at

---

3       Ms. Sample signed the Cancellation Request with her maiden name, Audrey Terrill.  *See* Cancellation Request; Dep. of Audrey Sample (June 25, 2015), Ex. 3 to Pl.'s Mot. [Dkt. # 74-4] ("Sample Dep.") 54:23–55:2.  She has since changed her name to Audrey Sample.  Sample Dep. 5:12–23, 54:23–55:2.  For clarity, the Court will refer to her as "Audrey Sample" throughout this Memorandum Opinion.

1; *see also* Ruckman Dep. 54:13–16 ("Question:  Did you understand that when you signed, you were asserting that the information in the application was true?  Answer:  Yes.").  As of August 31, 2012, when Ruckman signed the application, Almco had yet to ever operate as a deli, and its business continued to involve billiards and alcohol.  Ruckman Dep. 57:8–12, 45:22–46:17, 89:14–18; Def.'s Statement of Genuine Issues of Material Fact Not in Dispute [Dkt. # 72-2] ("Def.'s SOF") ¶ 7; Ruckman Decl. ¶¶ 12–13.

In January 2013, a shooting occurred on Almco's business premises during a private event where alcohol was being served.  Ruckman Dep. 10:22–25, 45:22–46:11.  Several patrons were injured, and as a result, claims were presented against the Nationwide insurance policy.  *Id.* 11:9–15, 44:2–8; Compl. ¶ 15.  Almco then "demanded that Nationwide afford it indemnification and a defense for all claims and causes of action arising out of" the January 2013 incident.  Compl. ¶ 16.  Since then, the company has ceased to do business.  Ruckman Dep. 23:12–15.

Nationwide initiated this action on July 2, 2013, seeking a declaratory judgment that the insurance policy it issued to Almco "was procured as a result of a material misrepresentation by Almco Limited, and as a result, the said policy is void, thereby relieving Nationwide from any obligation to defend, indemnify or otherwise provide insurance coverage or benefits" to Almco pursuant to D.C. Code § 31-4314.  Compl. ¶ 24.  On September 22, 2015, Almco moved for summary judgment on the grounds that it did not intend to deceive Nationwide through its responses on the Insurance Application.  Def.'s Mem. at 2, 4.  On September 30, 2015, Nationwide opposed Almco's motion, Pl.'s Resp. to Def.'s Mot. [Dkt. # 73] ("Pl.'s Opp."), and it filed a separate cross-motion for summary judgment on the issue of whether the allegedly false statements on the application materially affected Nationwide's decision to issue the insurance policy.  Pl.'s Mot.; Pl.'s Mem.  On October 11, 2015, Almco filed a combined reply in support of its motion

and an opposition to Nationwide's cross-motion.  Opp. of Def. to Pl.'s Mot. [Dkt. # 75]; Mem. of

P. & A. in Opp. to Pl.'s Mot. [Dkt. # 75-1] ("Def.'s Opp."); *see also* Reply of Def. to Pl.'s Opp. &

Opp. to Pl.'s Mot. [Dkt. # 76].  Nationwide did not file a reply in support of its cross-motion.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The party seeking summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary

judgment, the non-moving party must "designate specific facts showing that there is a genuine

issue for trial."  *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a

reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable

of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236,

1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw

reasonable inferences 'in the light most favorable to the party opposing the summary judgment

motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States

v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"The rule governing cross-motions for summary judgment . . . is that neither party waives

the right to a full trial on the merits by filing its own motion; each side concedes that no material

facts are at issue only for the purposes of its own motion." *Sherwood v. Wash. Post*, 871 F.2d

1144, 1147 n.4 (D.C. Cir. 1989) (alteration in original), quoting *McKenzie v. Sawyer*, 684 F.2d 62,

68 n.3 (D.C. Cir. 1982).   In assessing each party's motion, "[a]ll underlying facts and inferences

are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of

Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## ANALYSIS

The parties agree that D.C. Code § 31-4314 is the provision that governs this insurance

dispute.  *See* Compl. ¶ 24; Pl.'s Mem. at 5–6; Def.'s Mem. at 2–3.  The statute provides:

> The falsity of a statement in the application for any policy of insurance shall
> not bar the right to recovery thereunder unless such false statement was
> made with intent to deceive or unless it materially affected either the
> acceptance of the risk or the hazard assumed by the company.

D.C. Code § 31-4314.  "The statute sets forth a two-tiered test whereby insurance coverage may

be barred.  First, the statement must be false.  Second, the false statement must have been made

with an intent to deceive or must materially affect the acceptance of the risk or hazard assumed by

the company." *Skinner v. Aetna Life & Cas.*, 804 F.2d 148, 149 (D.C. Cir. 1986).[4]  "Both falsity

and materiality under section 31-4314 may be found as a matter of law." *Ross v. Cont'l Cas. Co.*,

393 F. App'x 726, 727 (D.C. Cir. 2010), citing *Prudential Ins. Co. of Am. v. Saxe*, 134 F.2d 16, 25

(D.C. Cir. 1943).

The parties have filed cross-motions for summary judgment on the issue of whether the

requirements of D.C. Code § 31-4314 have been satisfied in this case:  Almco contends that it

lacked the intent to deceive, but Nationwide seeks a declaration that the false statements materially

affected its acceptance of risk and therefore, bar recovery under the policy.  The Court first finds

---

4      The *Skinner* Court was discussing D.C. Code § 35-414, which was later recodified as D.C.
Code § 31-4314.  The text of the two provisions are identical.

that there is no dispute that the representations on Almco's Insurance Application seeking coverage with Nationwide were false when they were made. And it also concludes that there is no genuine dispute that the false statements materially affected Nationwide's acceptance of risk in insuring Almco, and so, Nationwide's motion for summary judgment will be granted. That finding renders Almco's motion moot because the statute requires only that one of two conditions be satisfied to bar recovery. *See* D.C. Code § 31-4314. But even if the Court were to reach Almco's motion, it would be denied because there is a genuine dispute of material fact as to whether the misrepresentations on the Insurance Application were made with the intent to deceive.

## I.      There is no dispute that the statements on Almco's Insurance Application were false.

The Insurance Application, which was signed by Ruckman on August 31, 2012, described Almco's business as a "deli," and it represented that the business did not have a website, did not "serve or sell alcohol," did not have "bouncers, DJs, live entertainment, pool tables . . . paid admission, cover charges or other similar exposures," and did not "have any other exposures that have not been identified" elsewhere on the application. Insurance Appl. at 2–3. Ruckman certified that the answers were "true, correct and complete to the best of [her] knowledge." *Id.* at 1; *see also* Ruckman Dep. 54:13–16 ("Question: Did you understand that when you signed, you were asserting that the information in the application was true? Answer: Yes.").

Almco does not appear to dispute that it never operated as a deli, and instead, conducted business as a billiards hall and entertainment venue that served alcohol and provided live music and entertainment, and its admissions in this case bear that out. Ruckman testified that when Almco first opened in 2011, it was not operating as a deli, and she admitted that as of the date she signed the Insurance Application with Nationwide, Almco had not undergone any transformation into a delicatessen. Ruckman Dep. 20:13–21, 57:8–12. In its statement of undisputed material

facts, Almco acknowledged that it "provided food service, had pool tables, offered live entertainment including DJs, served alcoholic beverages through vendors and caterers licensed to do so and had paid admissions and cover charges" while it was insured by Travelers, and that it planned to continue to operate in this manner while insured by Nationwide.  Def.'s SOF ¶¶ 3, 7.

Similarly, Ruckman averred that when she filled out the Insurance Application, she knew that Almco intended to "operate as a deli with a dining area for food intake, provide pool tables, have a stage for live music including disc jockeys, rent the facility out from time to time to entities with liquor licenses and that [it was] in the process of applying for [its] own liquor license." Ruckman Decl. ¶ 12.  She also testified that she told Sample during the application process that alcoholic beverages would be sold on the premises, and she admitted that as of August 2012, the District of Columbia had denied Almco the license to operate a deli.  Ruckman Dep. 57:8–17, 91:12–14.  Finally, there is evidence in the record showing that Almco had a website.  *See, e.g.*, *id.* 65:14–19; Ex. 5 to Ruckman Dep. [Dkt. # 74-3] (images of DC Soundstage's Facebook page).

In light of those admissions, it is clear that Almco's representations on the Insurance Application were false as of August 2012, the date Ruckman signed and certified the application. *See* Insurance Appl. at 1–3.[5]  So the Court finds there is no genuine dispute of material fact that

---

5       Where, as here, an applicant certifies that her responses on an insurance application are true and correct to the best of her knowledge, the truth or falsity of the answers must be analyzed under a "two-part subjective/objective analysis" that considers both the applicant's actual knowledge and the objective reasonableness of the answers in light of that knowledge.  *Ross*, 393 Fed. App'x at 727, citing *Skinner*, 804 F.2d at 150.  Here, there is no doubt that Ruckman knew that Almco did not operate as a deli and that it had pool tables, provided for the service of alcohol, and offered live entertainment, contrary to the representations on the application.  So whether her answers are analyzed objectively or subjectively, there is no dispute that the falsity requirement of section 31-4314 has been satisfied as a matter of law.  *See Skinner*, 804 F.2d at 151 ("What an applicant knows can be determined, and the conclusions that knowledge compels can be assessed.").

the threshold requirement of D.C. Code § 31-4314 – that "the statement[s] must be false," *Skinner*,

804 F.2d at 149 – has been satisfied.

**II.    Nationwide's motion for summary judgment will be granted because there is no genuine dispute that the misstatements on the Insurance Application materially affected Nationwide's acceptance of the risk or hazard in insuring Almco.**

Nationwide has moved for summary judgment on the second prong of D.C. Code § 31-

4314.  It insists that "Nationwide would not have placed the Nationwide Policy had it known the

true nature of Almco's business operations," and therefore, "[t]he misrepresentations made by

Almco in the Application materially affected either the acceptance of the risk or the hazard

assumed by Nationwide."  Pl.'s Mem. at 13–14.  Because Nationwide has put forth evidence

sufficient to show that the false statements on the Insurance Application had a material effect on

its decision to insure Almco, and because Almco has failed to identify any specific facts

demonstrating that there is a genuine dispute on that issue, Nationwide's motion for summary

judgment will be granted.

D.C. Code § 31-4314 provides that "[t]he falsity of a statement in the application for any

policy of insurance shall not bar the right to recovery thereunder . . . unless it materially affected

either the acceptance of the risk or the hazard assumed by the company."  D.C. Code § 31-4314.

"The test of materiality is whether the representation would reasonably influence the insurer's

decision as to whether it should insure the applicant."  *Westhoven v. New England Mut. Life Ins.*

*Co.*, 384 A.2d 36, 38 (D.C. 1978), quoting *Jannenga v. Nationwide Life Ins. Co.*, 288 F.2d 169,

172 (D.C. Cir. 1961).  In other words, "[a] misrepresentation that influences an insurer to assume

a risk which it otherwise would not have underwritten inevitably is material."  *Jones v. Prudential*

*Ins. Co. of Am.*, 388 A.2d 476, 481 (D.C. 1978).  "[W]here the evidence warrants, materiality may

be found as a matter of law." *Jannenga*, 288 F.2d at 172, citing *Kavakos v. Equitable Life Assur. Soc'y*, 88 F.2d 762, 763 (D.C. Cir. 1936)

In support of its motion for summary judgment on the materiality issue, Nationwide relies exclusively on the testimony of Audrey Sample, who was listed on the Insurance Application as the "producer contact" for the Peter Michael Felix Insurance Agency.  *See* Pl.'s Mem. at 10–13; Insurance Appl. at 2.  Sample testified that all of the information on the Insurance Application "came from Regina [Ruckman]," and that Ruckman confirmed that the answers to each of the questions were correct.  Sample Dep. 23:12–18, 25:16–22.  Sample also testified that had she been provided with accurate information, she would have acted differently given the importance of those questions to Nationwide.  For example, Almco stated in the Insurance Application that it did not have "bouncers, DJs, live entertainment, pool tables . . . paid admissions, cover charges or other similar exposures."  Insurance Appl. at 3.  Sample testified that if the answer to that question had been in the affirmative, she would not have sought a quote for the insurance coverage from Nationwide:

> Question:  Can we go down, skip a line and go down to, Do any of the locations have bouncers, DJs, live entertainment, pool tables, etcetera, etcetera.
>
> Answer:  Yes.
>
> Question:   If your computer had generated "Yes" based upon the information you received from Ms. Ruckman, would that have been a disqualifier?
>
> Answer:  Yes.  I would have had to – as soon as I would have received that information from the client which I would have discussed even prior to the application when we were talking about any changes in her business, etcetera, if that information would have come up, that would have automatically lead [sic] me to quote this with other carriers.  I wouldn't have wasted my time going to Nationwide.
>
> Question:  Why is that?

11

Answer:  Because they do not write businesses with those exposures.

Sample Dep. 49:7–24.

Sample also explained that the information that Almco was using the trade name "DC Soundstage" would have been a "red flag" to her and to Nationwide's underwriters. *Id.* 76:12–23. And she testified that if Ruckman had informed her that Almco had applied or would be applying for a license to serve alcohol, it would have affected "the eligibility of the policy." *Id.* 74:16–24. Finally, she stated that if she had known that Almco rented out the facility for private parties where alcohol was served, she would have written the insurance policy with a carrier other than Nationwide because that fact would have resulted in "a change in exposure." *Id.* 77:3–24.

Based on Sample's testimony, the Court finds that Nationwide has put forth evidence that the false representations on the Insurance Application – that Almco operated a deli, did not sell or serve alcohol, and did not have live entertainment or pool tables – were material to its decision to insure Almco, because Nationwide normally "do[es] not write businesses with those exposures." *Id.* 49:7–24; *see also Westhoven*, 384 A.2d at 38 ("The test of materiality is whether the representation would reasonably influence the insurer's decision as to whether it should insure the applicant."); *Jones*, 388 A.2d at 481 ("A misrepresentation that influences an insurer to assume a risk which it otherwise would not have underwritten inevitably is material.").

Because Nationwide has put forth evidence demonstrating the absence of a genuine dispute of fact on the question of materiality, the burden now shifts to Almco to "designate specific facts showing that there is a genuine issue for trial" on the second prong of D.C. Code § 31-4314.  *See Celotex*, 477 U.S. at 323–24 (internal quotation marks omitted).  Almco announces that "[w]hen one measures the abundance and variety of admissible evidence, from a range of sources, admissible evidence that supports the response of Defendant against the shallow, diaphanous and

12

gossamer claims of Plaintiff, with nothing more from Plaintiff, it is quite clear that the Motion for Summary Judgment should be denied." Def.'s Opp. at 15. But in opposing Nationwide's motion, Almco fails to point to any *facts* that controvert Nationwide's evidence regarding the materiality of the false statements or create a genuine dispute on the issue sufficient to withstand Nationwide's motion for summary judgment. An excess of adjectives cannot cure an absence of evidence.

In opposing Nationwide's motion, Almco relies heavily on several documents it insists were contained in an "Almco file" available to Sample as she completed the Insurance Application. Def.'s Opp. at 2–6, 9–11. First, it points to a document entitled "Information to Quote," Def.'s Mem. at 3; *see also* Def.'s Opp. at 2, 3 n.3, 5, 9–10, which lists the name of the insured as "Rips Billiard's (Almco Limited)" and describes the "type of work" as a "deli (cold deli)" with "pool tables" and a "dining area w/ stage for music." Ex. B. to Def.'s Mot. [Dkt. # 72-3].[6] Almco also directs the Court to a Commercial Lease Agreement, which it states "was attached to the Travelers Policy and . . . was presumably a part of the Almco Ltd. File maintained by the First Insurance Group of Maryland," and which "indicated that the premises would be used as a pool hall and for entertainment." Def.'s Mem. at 4; Def.'s Opp. at 3, 8, 11–12; *see also* Ex. D to Def.'s Mot. [Dkt. # 72-3]. And finally, it cites to its Certificate of Occupancy, Def.'s Opp. at 3, 5, 9–11, which described the premises as operating a "billiard parlor" trading under the name "DC Soundstage," *see* Ex. E to Def.'s Mot. [Dkt. # 72-3], and its August 2012 application for a liquor license, Def.'s

---

6       As Almco acknowledges in its opposition to Nationwide's motion, it is not clear from the document or from the record who prepared this document or when. *See* Def.'s Opp. at 3 n.3 (noting that the Information to Quote form was "prepared either by Ms. Shelley Hall at the time of the Travelers Application or by Ms. Audrey Sample at the time of the Nationwide Application"). Nationwide claims that the Information to Quote form was written by Shelley Christine Hall, a former employee of the First Insurance Group, and it directs the Court to the deposition transcript of Mary Beth Heider. Pl.'s Opp. at 4. But Nationwide failed to attach that transcript to any of its pleadings, and it is not otherwise contained in the record on this case, and so Nationwide has not provided sufficient evidentiary support for the Court to make a finding on this issue.

Opp. at 4–6, 8, 10, 16, which described the business as a "tavern" with "entertainment" and "dancing," *see* Ex. F to Def.'s Mot. [Dkt. # 72-3].   Almco maintains that these documents contradict Sample's testimony that she had no knowledge of Almco's actual business practices and "bear out that Defendant Almco either disclosed all material information, had no duty to disclose or Plaintiff failed to inquire about such information."  Def.'s Opp. at 2.

But Almco provides no support for its assertion that these documents were "presumably" part of an "Almco file," and it has not even attempted to show that the material was in Nationwide's possession, instead of in the hands of the insurance brokers at First Insurance Group or the Peter Michael Felix Insurance Agency.  And in any event, these materials are irrelevant to Nationwide's motion:  while these documents – if it could be shown that they were made available to Nationwide or its agents – might bear on Almco's intent to deceive, they do not alter the material nature of the false information transmitted in the Insurance Application.

Moreover, even if Sample had access to the documents, she was not responsible for Nationwide's insurance decisions:  she submitted the applications to Nationwide, and its underwriters made the ultimate call on whether an applicant was eligible for coverage based on the application.  *See* Sample Dep. 49:2–6 ("I respond to the questions that Nationwide asks me, and I provide that information to underwriting.  If I'm told it's eligible, then we are able to move forward binding coverage based on the information provided to us by the client."); *see also id.* 62:7–8 ("I was an agent for Nationwide. . . . I was not an employee for Nationwide.").  So what Sample allegedly knew when she prepared and submitted the Insurance Application to Nationwide also has no bearing on the legal question of whether the representations in the application signed

14

by Ruckman were material to Nationwide's decision to insure.[7]  *See Burlington Ins. Co. v. Okie Dokie, Inc.*, 398 F. Supp. 2d 147, 157 (D.D.C. 2005) ("[A]n insurer has a right to rely on statements made in the insurance application.  An insurer's reliance on statements made in an insurance application is generally recognized as objectively reasonable."), *amended in part*, 439 F. Supp. 2d 124 (D.D.C. 2006).

Almco also insists that D.C. Code § 31-4314 does not apply to this case because "[e]ven if the insured makes an otherwise material omission in its insurance application, if the insured 1) was under no duty to disclose the information or 2) if the insurer fails to inquire about some fact, that fact *ipso facto* is not material."  Def.'s Opp. at 1, citing *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 780–81 (4th Cir. 1995); *see also id.* at 7 ("[W]here on the fact [sic] of an [insurance] application a question appears to be not answered at all or imperfectly answered, and the insurers issue the policy without further inquiry, they waive the want or imperfection in the answer.").  But Nationwide did inquire about the relevant facts through the questions on the Insurance Application, and Almco agreed that it was under a duty to answer those questions in a manner that was "true, correct and complete."  Insurance App. at 1–3.  It provided answers, but as discussed in Section I, there is no dispute that those statements were false when they were made.  So there was no waiver

---

[7]     Even Almco appears to recognize that this evidence relates to its intent, and not to materiality:  it concludes the section of its opposition laying out all of its documentary and testimonial evidence by insisting that "[a]t no point did Ms. Ruckman . . . intentionally or even inadvertently misrepresent the activities of Almco or seek to deceive Ms. [Sample], Ms. Hall or anyone associated with First Insurance Group or Nationwide Insurance."  Def.'s Opp. at 6.  Almco also directs the Court to the Travelers Policy and it insists that because it was able to operate a billiards hall with alcohol service and live entertainment under that policy, it "reasonably assumed it could continue the activities it was already doing" under the Nationwide policy, and therefore, "[t]here was no deception."  *Id.* at 9.  Again, that goes to the intent prong of D.C. Code § 31-4314; it is irrelevant to the wholly-independent inquiry of whether the misstatements materially affected Nationwide's decision to issue the insurance policy to Almco.  *See Skinner*, 804 F.2d at 149 ("[T]he false statement must have been made with an intent to deceive *or* must materially affect the acceptance of the risk or hazard assumed by the company.") (emphasis added).

by Nationwide of its right to challenge the materiality of those misstatements. *See, e.g.*, *Burlington Ins. Co.*, 398 F. Supp. 2d at 157 (D.D.C. 2005) ("[A]n insurer is entitled to truthful responses to all questions on an application so that it may correctly evaluate the risk and determine whether the applicant meets its underwriting standards."), quoting *Apolskis v. Concord Life Ins. Co.*, 445 F.2d 31, 35 (7th Cir. 1971).

Almco also claims that "[a]t no point in its Complaint or in any sworn statement made by Plaintiff's Agents does Plaintiff proclaim that not operating as a deli would have meant that Plaintiff would not insure Defendant Almco." Def.'s Opp. at 7. But the problem from Nationwide's perspective was not the lack of sandwiches – it was the presence of pool tables, live entertainment, and alcohol.[8] And in any event, plaintiff's assertion is plainly contradicted by the complaint, which alleges that "Nationwide would have declined to issue the Nationwide Policy had it known the truth of the business conducted by Almco Limited," Compl. ¶ 22, and by Sample's sworn deposition testimony, in which she stated that had she known the realities of Almco's business, she would not have even bothered to send the application to Nationwide because it "do[es] not write businesses" with exposures like "bouncers, DJs, live entertainment, [and] pool tables." Sample Dep. 49:7–24; *see also id.* 77:3–24 (stating that Sample would have had to write the policy with another, more expensive insurance carrier had she known that Almco was trading as DC Soundstage or that it rented out its facility for private parties where alcohol was served, because that fact would have resulted in "a change in exposure").

"[P]roof that an application for insurance contains a false statement which materially affects the acceptance of risk or hazard assumed by the insurer is sufficient to defeat a claim under

---

8        The Court notes that there is some precedent for the notion that the mere presence of a pool table can spell "Trouble." *See* Meredith Willson, "Ya Got Trouble," *The Music Man* (1957).

the policy." *Hill v. Prudential Ins. Co. of Am.*, 315 A.2d 146, 148 (D.C. 1974).  Awarding the insurer summary judgment in such cases is proper where, "even if unintentional, [the insured's] misrepresentations without doubt materially affected the hazard assumed by the company and its decision to accept the risk of insuring [the insured]." *Blair v. Inter-Ocean Ins. Co.*, 589 F.2d 730, 732 (D.C. Cir. 1978) (affirming grant of summary judgment in favor of insurer based on evidence, including its underwriting manual, showing that "had [the insured] not misrepresented the condition of his health, no policy would have been issued to him").   Here, Nationwide has put forth evidence showing that Almco's statements on the Insurance Application were false and that they materially affected Nationwide's acceptance of risk in insuring Almco, and the Court finds that Almco has failed to designate specific facts demonstrating that there is a genuine dispute on this issue.  So, Nationwide's motion for summary judgment will be granted, and it is entitled to the declaration it seeks that the admitted falsehoods in the Insurance Application bar recovery under D.C. Code § 31-4314.

**III.    Almco's motion for summary judgment is moot, but even if it were not, it would be denied because there is a genuine dispute of material fact as to whether the misstatements in the Insurance Application were made with the intent to deceive.**

In light of the Court's finding that Nationwide is entitled to summary judgment, and the alternative nature of D.C. Code § 31-4314, the Court need not reach the question of whether Almco's misstatements were made with the intent to deceive.  But even if Almco's motion for summary judgment were not moot, it would fail.  Almco's motion turns upon Ruckman's self-serving and disputed testimony about what she told the insurance agent, and while there are some documents in the record that appear to indicate that some information concerning the true nature of Almco's business was transmitted to someone, either at the time Almco applied for the original Travelers Policy or the Nationwide policy, there is no evidence that would tend to establish – much

less establish with such certainty as to eliminate the need for a jury – that the information was ever conveyed to Nationwide.  So Almco has not met its burden to demonstrate the absence of a genuine issue of material fact on the issue of its intent to deceive.

Almco asserts that Ruckman informed Audrey Sample – the "producer contact" for the Nationwide policy – of the exact nature of Almco's business during the application process, Def.'s SOF ¶ 7, citing Ruckman Decl. ¶ 12, and that Sample filled out the Insurance Application with the incorrect answers, despite Ruckman's truthful responses and the materials in the "Almco file." Ruckman Decl. ¶ 15.  Almco thus contends that Nationwide "knew that Almco conducted business as a Billiard Hall when it issued the insurance policy," Def.'s Opp. at 9, and that any alleged misstatements on the Insurance Application were therefore not "made with intent to deceive," as required to trigger the section 31-4314 bar to recovery.  *See* Def.'s Mem. at 2, 4.

But Ruckman's averments are directly contradicted by Sample's testimony.  She testified that all the responses on the application came directly from Ruckman, Sample Dep. 23:12–18, and that she would never "enter any information or answer any of the questions in the application when the information did not come from the client," because "[t]hat is a huge violation of insurance practices."  *Id.* 19:9–18.  Sample further stated that Ruckman provided her with the following information in response to the questions on the Insurance Application:  Almco would operate as a deli, *id.* 26:9–18, it would not sell or serve alcohol, *id.* 28:1–16, it would not have bouncers, DJs, live entertainment, pool tables, paid admissions, or cover charges, *id.* 29:1–17, and it had no other exposures that were not otherwise identified in the application.  *Id.* 27:9–21.  Sample also testified that Ruckman never informed her that Almco would rent out its facilities for private parties where alcohol would be served, *id.* 30:5–16, or that Almco had applied for its own liquor license.  *Id.* 28:17–21.  So, because Ruckman's testimony that she was truthful with Sample in completing the

18

application is contradicted by other record evidence, it cannot provide a basis for the Court to find that it is undisputed that Almco lacked the intent to deceive Nationwide when Ruckman certified the false representations on the Insurance Application.

In support of its motion, Almco also relies heavily on the Information to Quote form and the other documents discussed above – the Certificate of Occupancy, Commercial Lease Agreement, and liquor license application – which it insists were part of an "Almco file" in Sample's possession.  Def.'s Mem. at 3–4; *see also* Def.'s Opp. at 2, 3 n.3, 5, 9–10.  But there is no evidence in the record showing that such a file existed or that it was available to Nationwide at the time it made its decision to insure Almco.  So the mere existence of those documents is also not enough to establish that there is no dispute that Nationwide was aware of the true nature of Almco's business, and that Almco therefore could not have intended to deceive Nationwide when it  certified the false answers on the Insurance Application.

## CONCLUSION

Because there is no dispute that Almco made false statements on the Insurance Application and that those misstatements materially affected Nationwide's acceptance of the risk or hazard it assumed by insuring Almco, the Court will grant Nationwide's motion and award it judgment as a matter of law pursuant to D.C. Code § 31-4314, and it will deny as moot Almco's motion for summary judgment.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  April 13, 2016

19